**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Nerye Aminov, individually, and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>     v.<br><br>DraftKings, Inc.,<br><br>   Defendant. | Civil Action No. 1:24-cv-08472-MKB-LKE<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DRAFTKINGS INC.'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

FACTUAL ALLEGATIONS .....................................................................................3

LEGAL STANDARD..................................................................................................6

ARGUMENT .................................................................................................................7

    I.     Plaintiff's GBL Claims Should Be Dismissed......................................................7

        A.     The Promotion Was Not Deceptive Or Materially Misleading Because The Terms Were Fully Disclosed To Plaintiff. ............................8

        B.     Plaintiff Has Not Alleged An Injury That Is Cognizable on a Claim under Sections 349 and 350. ...................................................................14

        C.     Plaintiff Has Not Satisfied the Territoriality Requirement of GBL Sections 349 and 350. ...................................................................17

    II.     Plaintiff's Causes of Action for Intentional Misrepresentation and Fraudulent Inducement Should Be Dismissed. .......................................................18

        A.     Plaintiff Has Not Pled A False Representation Or A Material Omission. ...................................................................19

        B.     Plaintiff Has Not Alleged that He Relied on the Allegedly Misleading Statement...................................................................20

        C.     Plaintiff Has Not Pled Fraud Damages Because He Does Not Allege That He Lost Money. ...................................................................21

        D.     Plaintiff's Cause of Action of Fraudulent Inducement Should Be Dismissed Because He Has Alleged No Contract Between the Parties.....................................................................................22

    III.     Plaintiff's Cause of Action for "Quasi Contract/Unjust Enrichment/Restitution" Should Be Dismissed As Duplicative of His Other Claims. .......................................................................................23

    IV.     Plaintiff Lacks Standing to Seek Injunctive Relief.................................................24

    V.     The Court Should Deny Leave to Amend............................................................25

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC,*
2 F. Supp. 3d 525 (S.D.N.Y. 2014)..............................................................8, 17

*A.N.R. Inv. Co. v. HSBC Private Bank,*
135 A.D.3d 632 (2016) ..............................................................................10

*Ackerman v. Coca-Cola Co.,*
No. CV-09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)......................15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).....................................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007)........................................................................6, 7

*Ballas v. Virgin Media, Inc.,*
18 Misc.3d 1106(A), No. 600014-2007, 2007 WL 4532509 (N.Y. Sup. Ct.
Dec. 6, 2007)..............................................................................................10

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.,*
995 F. Supp. 2d 291 (S.D.N.Y. 2014).........................................................20

*Belfiore v. Procter & Gamble Co.,*
311 F.R.D. 29 (E.D.N.Y. 2015)....................................................................8

*Belfon v. Credit Check Total Consumerinfo.com, Inc.,*
No. 18-CV-00408, 2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018).......................3

*Bermudez v. Colgate-Palmolive Co.,*
667 F. Supp. 3d 24 (S.D.N.Y. 2023)...........................................................23

*Berni v. Barilla S.p.A.,*
964 F.3d 141 (2d Cir. 2020).......................................................................25

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002)......................................................................3, 9

*Chufen Chen v. Dunkin' Brands, Inc.,*
954 F.3d 492 (2d Cir. 2020)....................................................................7, 10

*Chung v. Igloo Products Corp.,*
No. 20-CV-4926, 2022 WL 2657350 (E.D.N.Y. July 8, 2022)........................11

*Chunn v. Amtrak*,
    916 F.3d 204 (2d Cir. 2019)...................................................................25

*City Calibration Centers Inc. v. Heath Consultants Inc.*,
    727 F. Supp. 3d 332 (E.D.N.Y. 2024) ..............................................18, 22

*Cooper v. Anheuser-Busch, LLC*,
    553 F. Supp. 3d 83 (S.D.N.Y. 2021).......................................................23

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021).......................................................7

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ....................................................20

*Derbaremdiker v. Applebee's Int'l, Inc.*,
    No. 12-CV-01058, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ..............6, 13, 14

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
    974 F.2d 270 (2d Cir. 1992).................................................................20

*Edmundson v. Klarna, Inc.*,
    85 F.4th 695 (2d Cir. 2023) ................................................................13

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)..........................................................6, 8, 10

*Fink v. Time Warner Cable*,
    837 F. Supp. 2d 279 (S.D.N.Y. 2011)......................................................11

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019)..................................................................7

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314 (2002) ......................................................................17

*Greene v. Clean Rite Centers, LLC*,
    714 F. Supp. 3d 134 (E.D.N.Y. 2024) ....................................................24

*Hasemann v. Gerber Prods. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019)...........................................................15

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)...................................................9, 25

*Jensen v. Cablevision Sys. Corp.*,
    372 F. Supp. 3d 95 (E.D.N.Y. 2019) ........................................................8

*L–7 Designs, Inc. v. Old Navy, LLC,*
    647 F.3d 419 (2d Cir. 2011)....................................................................3, 9

*Leder v. Am. Traffic Sols., Inc.,*
    81 F. Supp. 3d 211 (E.D.N.Y. 2015) ..........................................................24

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015)........................................................................18

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)....................................................................................24

*MacNaughton v. Young Living Essential Oils, LC,*
    67 F.4th 89 (2d Cir. 2023) ............................................................................7

*McTyere v. Apple, Inc.,*
    663 F. Supp. 3d 247 (W.D.N.Y. 2023) .......................................................23

*McVetty v. TomTom N. Am., Inc.,*
    No. 19-CV-4908, 2021 WL 965239 (S.D.N.Y. Mar. 13, 2021) ...............17

*Meyer v. Uber Techs., Inc.,*
    868 F.3d 66 (2d Cir. 2017)..........................................................................13

*Meyer, Suozzi, Eng. & Klein, P.C. v. Higbee,*
    No. 18-CV-03353, 2020 WL 1140424 (E.D.N.Y. Mar. 9, 2020)..........15

*Miller v. United States ex rel. Miller,*
    110 F.4th 533 (2d Cir. 2024) ........................................................................7

*Morby v. Di Siena Associates LPA,*
    291 A.D.2d 604 (2002) ...............................................................................20

*Nelson v. MillerCoors, LLC,*
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) .......................................................23

*Pauwels v. Deloitte LLP,*
    83 F.4th 171 (2d Cir. 2023) ........................................................................21

*Pelman v. McDonald's Corp.,*
    272 F.R.D. 82 (S.D.N.Y. 2010) ..................................................................15

*Serrano v. Cablevision Sys. Corp.,*
    863 F. Supp. 2d 157 (E.D.N.Y. 2012) .....................................................6, 10

*Shovak v. Long Island Commercial Bank,*
    50 A.D.3d 1118 (2008) ...............................................................................10

*Silvester v. Selene Fin., LP*,
  No. 18-CV-02425, 2019 WL 1316475 (S.D.N.Y. Mar. 21, 2019) ....................................9, 10

*In re Sling Media Slingbox Advert. Litig.*,
  202 F. Supp. 3d 352 (S.D.N.Y. 2016) ....................................................................................14

*Small v. Lorillard Tobacco Co.*,
  94 N.Y.2d 43 (N.Y.1999) ........................................................................................................16

*Stuart Silver Associates, Inc. v. Baco Dev. Corp.*,
  245 A.D.2d 96 (1997) ..............................................................................................................18

*Sw. Invs. Grp., LLC v. JH Portfolio Debt Equities, LLC*,
  169 A.D.3d 1510 (2019)93 N.Y.S.3d 775 (4th Dep't 2019) ....................................................21

*Transnational Mgmt. Sys. II, LLC v. Carcione*,
  No. 14-CV-2151, 2016 WL 7077040 (S.D.N.Y. Dec. 5, 2016) ...............................................20

*Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*,
  449 F. Supp. 3d 385 (S.D.N.Y. 2020)......................................................................................20

*Valcarcel v. Ahold U.S.A., Inc.*,
  577 F. Supp. 3d 268 (S.D.N.Y. 2021)......................................................................................17

*Winfield v. Citibank, N.A.*,
  842 F. Supp. 2d 560 (S.D.N.Y. 2012)........................................................................................9

*Wright v. Publishers Clearing House, Inc.*,
  439 F. Supp. 3d 102 (E.D.N.Y. 2020) ......................................................................................17

*Yoomi Babytech, Inc. v. Anvyl, Inc.*,
  No. 20 Civ. 7933, 2021 WL 4332258 (S.D.N.Y. Sept. 22, 2021) ..........................................22

## Statutes

New York General Business Law
  § 349.................................................................................................................... *passim*
  § 350.................................................................................................................... *passim*

## Other Authorities

Fed. R. Civ. P. 9(b) ........................................................................................................6, 7

Fed. R. Civ. P. 12(b)(1).......................................................................................................3

Fed. R. Civ. P. 12(b)(6)....................................................................................................6, 9

## INTRODUCTION

Plaintiff Nerye Aminov purports to bring a New York and nationwide class action concerning a DraftKings Inc. ("DraftKings") promotion that offered a bonus of up to $1,000 in site credits to new users who deposited and wagered funds within 90 days of signing up for a DraftKings account (the "Promotion"). Mr. Aminov claims the Promotion was misleading and fraudulent because he purportedly believed that all a user had to do to immediately receive $1,000 in site credits was sign up for a DraftKings account. In fact, as fully disclosed by the Promotion's terms and conditions ("Promotional Terms")—which were presented to every user before they deposited—a user had to satisfy certain additional requirements in order to receive a bonus of that amount. Among other reasons set forth herein, Mr. Aminov's Complaint should be dismissed with prejudice because the Promotional Terms clearly disclose the requirements Mr. Aminov claims to have been unaware of.

Mr. Aminov's attempt to state a claim under New York General Business Law ("GBL") §§ 349 & 350 fails on that ground and several others. First, Mr. Aminov has not alleged a deceptive practice. He included only part of the Promotion—the banner—in his Complaint, while omitting the Promotional Terms, even though the Promotional Terms are expressly referenced in the banner that Mr. Aminov copied into his Complaint and were presented to Mr. Aminov before he entered the Promotion. The Promotional Terms clearly and conspicuously disclosed, in plain English, *all* of the conditions that a new user must meet to receive any deposit bonus, including each of the specific requirements that Mr. Aminov alleges he failed to understand: that to receive a bonus in the amount of $1,000 in site credits, he would have to deposit $5,000 in cash with DraftKings and wager at least $25,000 within 90 days on daily fantasy contests, sportsbook bets with -300 odds or longer, or casino products. Because the requirements that Mr. Aminov alleges made the Promotion fraudulent and misleading were, in

1

fact, fully disclosed to him and all new users prior to depositing and placing a wager, the Promotion was not misleading. Second, Mr. Aminov has not alleged—and cannot allege—an injury as required to state claims under GBL §§ 349 & 350, both because he fails to allege that the Promotion caused him to lose money (and in fact admits he came out ahead with $100 in site credits) and because he does not claim to have bought anything from DraftKings. While he alleges that he made a deposit as part of entering the Promotion, a deposit into an account is not a loss, but rather, it is a transfer of funds that remain in the control of the account holder and which he is allowed to withdraw. In addition, even if the Promotion were deceptive—and it was not— Mr. Aminov is required to allege he was injured in some way separate and apart from the alleged deception, but he does not. Finally, Mr. Aminov does not allege that he entered the Promotion while in New York, as required to support the territorial element of a GBL §§ 349 & 350 claim.

The Complaint also fails to state claims for intentional misrepresentation and fraudulent inducement. Because the Promotional Terms that were presented to users beforehand fully disclosed the requirements, Mr. Aminov does not, and cannot, allege any false statement or omission in support of those claims. In addition, while Mr. Aminov includes a banner purportedly from DraftKings' website as support for his claim of intentional misrepresentation, he has failed to allege that he relied on that banner in deciding to sign up for a DraftKings account. Nor has he pled that he was damaged or injured, as explained above. Mr. Aminov also has not adequately alleged that he was induced to enter a contract with DraftKings, and therefore his cause of action for fraudulent inducement should be dismissed for that reason as well.

Finally, Mr. Aminov has included an unjust enrichment claim as a catchall cause of action that is factually indistinguishable from his other claims, a practice that is impermissible under New York law and requires dismissal.

In addition to failing to state any claim upon which relief can be granted, Mr. Aminov's request for injunctive relief should be dismissed under Rule 12(b)(1) for lack of standing, because he cannot demonstrate a risk of future harm from the Promotion.

For these reasons, among others, the Court should dismiss the Complaint with prejudice.

## <u>FACTUAL ALLEGATIONS</u>

The Complaint concerns a sign-up promotion that DraftKings allegedly ran in 2022 and 2023 in which it advertised a "'$1,000 Deposit Bonus' as a reward for signing up for its sportsbook platform." Compl. ¶ 31.[1] A banner on DraftKings' website displayed the statement "JOIN DRAFTKINGS SPORTSBOOK GET A $1,000 DEPOSIT BONUS!", immediately above a hyperlink to view the "Terms" of the Promotion:



*Id.* Mr. Aminov alleges that, based on the banner, he believed that "he would receive $1,000 automatically deposited to his DraftKings account when, as a first-time user, he opened a new DraftKings account and made an initial deposit." *Id*. ¶ 2. However, pursuant to the Promotional Terms that were presented to users in advance, a user was required to meet a number of other requirements to receive the maximum bonus of $1,000 in site credits. Compl. ¶ 35. The requirements that Mr. Aminov admits had to be met included: "the new user: i) Must

---

[1] As required, and for the purposes of this motion only, DraftKings relies on facts taken from the Complaint, without accepting their truth. As discussed further below, DraftKings also relies on the Promotional Terms, which the Court may consider because they are referenced in the Complaint, Mr. Aminov had "notice" of them, and they are "integral to [his] claim." *See L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, No. 18-CV-00408, 2018 WL 4778906, at *3 (E.D.N.Y. Oct. 1, 2018).

immediately deposit at least $5,000 in cash with DraftKings; and ii) Must wager at least $25,000 with DraftKings within 90 days; and iii) do so on daily fantasy contests, sportsbook bets with -300 odds or longer, and/or casino products." *Id.* ¶ 33. According to Mr. Aminov, DraftKings did not "fairly disclose that consumer[s] needed to immediately deposit $5,000 and then subsequently bet at least $25,000 to qualify for the $1,000 Deposit Bonus." *Id.* ¶ 36.

Contrary to Mr. Aminov's allegations, the Promotional Terms—which were provided in advance to Mr. Aminov and all new users—completely and clearly explain the requirements of the Promotion. *See* Declaration of Gary Wimbridge In Support Of DraftKings Inc.'s Motion to Dismiss ("Wimbridge Decl.") ¶¶ 4–5 & Ex. 1. The full terms were displayed to new users before funds could be deposited. *Id.* ¶ 5. These terms were materially the same whether a new user entered the Promotion from DraftKings' website or mobile application. *Id.* ¶ 6. For example, if a new user entered the Promotion via the DraftKings mobile application, the application would have displayed the Promotional Terms on the same screen as his first deposit. *Id.* & Ex. 1.

The top portion of the deposit screen—above where the user could select the amount of an initial deposit, as shown in Figure 1 below—explained to the user that he or she could receive bonus funds of "up to $1,000," in the amount of "20%" of the deposit. *Id.* ¶ 4 & Ex. 1. That top portion of the screen also stated that bonus funds would be "earned as you play," *i.e.*, earned as the user makes wagers. *Id.* On the same screen, the DraftKings application displayed, in full, the requirements applicable to the Promotion, as shown in Figure 2 below. *Id.*

| **Figure 1** | **Figure 2** |
|---|---|
|  | *A user's first deposit (min. $5) qualifies the user to receive up to $1,000 in bonus funds in the form of site credits that can only be used on DraftKings. Bonus amount is equal to 20% of that deposit amount, not to exceed $1,000 (the user must deposit $5,000 to be eligible to receive the maximum possible bonus amount of $1,000). Bonus funds will be awarded to the user according to the following play-through requirement: for every $25 played on DraftKings in DFS/Sportsbook/Casino, the user will receive $1 in bonus funds released into their player account (e.g., a $5,000 deposit requires a user to play through a cumulative total of $25,000 in daily fantasy contests, sportsbook (-300 odds or longer), casino products, or any combination thereof to receive the maximum possible bonus amount of $1,000). The play-through requirement must be met 90 days from the date of first deposit to receive maximum bonus. After such date, you are ineligible to earn any additional bonus funds as part of this promotion. Customers who previously made a deposit on DraftKings are ineligible for this promotion. Limit one (1) deposit bonus per user. Promo ends 4/30/22. |

Mr. Aminov alleges that he "signed up for DraftKings and made an initial deposit of $500 on January 27, 2022," without alleging where he was located at the time. *See* Compl. ¶ 51. When Mr. Aminov deposited $500, "Defendant credited him a Deposit Bonus of only up to $100," which, in accordance with the Promotional Terms that were presented to every user before they deposited, is 20% of his initial deposit. *Id.* ¶ 52. In other words, Mr. Aminov concedes he received a $100 credit from DraftKings as a result of the Promotion. He does not allege that he wagered and lost his initial deposit or his site credits.

According to the Complaint, "Plaintiff would not have signed up for or used DraftKings if he had been adequately informed of the risks associated with the $1,000 Deposit Bonus promotion." Compl. ¶ 41; *see also id.* ¶¶ 42, 53. Mr. Aminov does not allege what those "risks" are, or allege that he lost his $100 deposit or was otherwise harmed in any way.

Based on these allegations, Mr. Aminov attempts to assert causes of action for: (1) "Violation of N.Y. Gen. Bus. Law §§ 349 & 350," (2) "Intentional Misrepresentation," (3) "Fraudulent Inducement," and (4) "Quasi Contract/Unjust Enrichment/Restitution."

## LEGAL STANDARD

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). On a motion to dismiss, "a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). In particular, when the complete terms of a promotion or consumer contract defeat a claim, the court can dismiss the claim on the pleadings. *See, e.g.*, *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 167–68 (E.D.N.Y. 2012); *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012).

Rule 9(b) imposes a heightened pleading standard where fraud is an element of a claim. *See* Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a complaint alleging fraud 'ordinarily' must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

fraudulent." *Miller v. United States ex rel. Miller*, 110 F.4th 533, 543–44 (2d Cir. 2024) (internal

quotation marks omitted). A complaint must also explain with particularity "*why* the statements

were fraudulent." *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (emphasis

added). "Allegations that are conclusory or unsupported by factual assertions are insufficient."

*ATSI Commc'ns, Inc.*, 493 F.3d at 99. Rule 9(b)'s heightened pleading standard applies to an

"unjust enrichment claim" that "sounds in fraud." *MacNaughton v. Young Living Essential Oils,*

*LC*, 67 F.4th 89, 99 (2d Cir. 2023) (cleaned up).

## ARGUMENT

### I.    Plaintiff's GBL Claims Should Be Dismissed.

Mr. Aminov alleges that the Promotion and its marketing intentionally misled him, and

other customers, into creating DraftKings accounts in violation of New York law. But Mr.

Aminov's claim fails for the simple reason that each and every aspect of the Promotion that he

alleges was misleading was, in fact, disclosed in full in the Promotional Terms before he

deposited money and placed a wager. In addition, Mr. Aminov does not allege any actionable

injury, nor does he allege that he was even in New York when the allegedly actionable conduct

occurred. As a result, his GBL claims should be dismissed.

New York law prohibits "false advertising" and "deceptive acts or practices in the

conduct of any business, trade or commerce in the furnishing of any service" within New York.

GBL §§ 349 & 350. To state a GBL section 349 or 350 claim, a plaintiff must allege that a

defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and

that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice. *See Chufen*

*Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020); *Cosgrove v. Oregon Chai, Inc.*,

520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (standard for recovery is the same under GBL §§ 349

and 350). In addition, the plaintiff must plead that the allegedly deceptive transaction occurred in

New York. *See 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547 (S.D.N.Y. 2014) ("Sections 349 and 350 contain a 'territoriality' requirement: to state a claim under either provision, the deception of consumers must occur in New York") (citing *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002)).

The New York Court of Appeals "has established an objective standard for determining whether acts or practices are materially deceptive or misleading 'to a reasonable consumer acting under the circumstances.'" *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 120 (E.D.N.Y. 2019) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

Mr. Aminov's GBL claims fail because, among other reasons, (1) the Promotion was not deceptive or misleading as a matter of law, (2) his Complaint does not allege a cognizable injury, and (3) he has not alleged facts to satisfy the territoriality requirement.

**A.    The Promotion Was Not Deceptive Or Materially Misleading Because The Terms Were Fully Disclosed To Plaintiff.**

Mr. Aminov alleges that the Promotion is misleading because a user must "satisfy three significant requirements" in order to qualify for a bonus of $1,000 in site credits: (1) deposit at least $5,000 with DraftKings, (2) wager $25,000 within 90 days, and (3) wager the deposit funds on specific contests, namely, daily fantasy contests, sportsbook bets with -300 odds or longer, or casino products. Compl. ¶ 33. However, the terms of the Promotion fully and clearly disclosed those three requirements to all users, and the Court must consider the Promotion "as a whole" (*i.e.*, not just the banner portion alone, but rather the banner in conjunction with the Promotional Terms that were presented before any funds could be deposited). *See Belfiore v. Procter &*

*Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole. The entire mosaic is viewed rather than each tile separately.") (internal quotation marks omitted). When considering the full Promotional Terms that Mr. Aminov excluded from his Complaint, it is clear that the Promotion was neither deceptive nor misleading.

As an initial matter, this Court may consider the Promotional Terms in ruling on this motion, even though Plaintiff did not include them in the Complaint. A "[p]laintiff['s] failure to include matters of which as pleader[] [he] had notice and which were integral to [his] claim—and that [he] apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion." *L–7 Designs, Inc.*, 647 F.3d at 421; *see Chambers*, 282 F.3d at 153. "When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and which are either in the plaintiff's possession or which the plaintiff knew about when bringing suit, or matters of which judicial notice may be taken." *Silvester v. Selene Fin., LP*, No. 18-CV-02425, 2019 WL 1316475, at *1 n.1 (S.D.N.Y. Mar. 21, 2019) (citing *Brass v. Am. Film Techs, Inc.*, 987 F.2d 142, 150 (2d. Cir. 1993)); *Chambers*, 282 F.3d at 153; *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 564 (S.D.N.Y. 2012); *see also Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) ("At the motion-to-dismiss stage, the Court's review is limited to the facts as-pleaded by the plaintiff, documents appended to or referred to in the complaint, and to matters of which judicial notice may be taken.") (internal quotation marks omitted). Mr. Aminov repeatedly referenced the terms of the Promotion in the Complaint in paragraphs 31 ("View Terms"), 33 (where he describes portions of them), and 35 (referring to "DraftKings' actual policy" regarding the Promotion). Thus,

consideration of the Promotional Terms in this motion is proper.

Here, the Promotional Terms explained, in advance, each and every requirement for obtaining the maximum bonus amount, including the three that Mr. Aminov alleges rendered the Promotion misleading. Courts in this Circuit routinely hold that "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed." *See, e.g.*, *Chufen Chen*, 954 F.3d at 501 (holding that "the district court properly concluded that these advertisements were not actionable under either GBL provision as a matter of law" where "the allegedly deceptive practice was fully disclosed") (internal citations and quotation omitted); *Fink*, 714 F.3d at 742 (dismissing claim under Section 349 and stating that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception"); *Silvester*, 2019 WL 1316475, at *9 (holding that courts are "reluctant to find a practice is materially misleading . . . if Defendant fully disclosed the terms and conditions of the alleged deceptive transaction that caused harm to the Plaintiff"); *Serrano*, 863 F. Supp. 2d at 167–68 (dismissing Section 349 claim where defendant's alleged deceptive practice—discretionary restriction of bandwidth or suspension of internet service—was fully disclosed in the Terms of Service and Acceptable Use Policy).[2]

First, Mr. Aminov alleges the Promotion was misleading because a new user was required to "deposit at least $5,000 in cash with DraftKings" to qualify to receive $1,000 in site

---

[2] *See also A.N.R. Inv. Co. v. HSBC Private Bank*, 135 A.D.3d 632, 634 (2016) (dismissing Section 349 claim where "HSBC's actions were fully authorized by the terms and conditions signed by plaintiffs"); *Ballas v. Virgin Media, Inc.*, 18 Misc.3d 1106(A), No. 600014-2007, 2007 WL 4532509, at *4–6 (N.Y. Sup. Ct. Dec. 6, 2007) (dismissing Section 349 claim where alleged deceptive practice was "fully revealed and explained to Plaintiff" because consumers were directed to check terms and conditions on defendant's website and Terms of Service booklet was provided inside package) *aff'd,* 60 A.D.3d 712, 713 (2009) (finding that plaintiff failed to allege she suffered injury as a result of alleged deceptive business practice); *Shovak v. Long Island Commercial Bank*, 50 A.D.3d 1118, 1119 (2008) (affirming dismissal of Section 349 claim where fee associated with mortgage fully disclosed to plaintiff in written agreement).

credits. Compl. ¶ 33(i); *id.* ¶ 36 (alleging that "DraftKings failed to fairly disclose that [a] consumer needed to immediately deposit $5,000 . . . to qualify for the $1,000 Deposit Bonus"). In fact, the Promotional Terms disclose that requirement expressly: "the user must deposit $5,000 to be eligible to receive the maximum possible bonus amount of $1,000." *See* Wimbridge Decl. ¶ 4 & Ex. 1. The Promotional Terms also fully explain that a bonus in the amount of $1,000 in site credits is not automatically awarded, but rather the amount of the bonus depends on the amount of the user's initial deposit, stating that a user's deposit of money is what "qualifies the user to receive up to $1,000 in bonus funds," and that the exact "[b]onus amount is equal to 20% *of that deposit amount*, not to exceed $1,000." *Id.* (emphasis added). In addition to being described in the full set of Promotional Terms, this requirement was also conspicuously displayed on DraftKings' deposit page, above the field in which a new user could select an amount to deposit. *See id.* Ex. 1 ("[Y]ou will receive a **20% deposit bonus up to $1,000**! Bonus funds are earned as you play."). Given this prominent and repeated language that bonus funds of "up to" $1,000 could be obtained—especially in conjunction with the full explanation in the Promotional Terms of precisely how a user could obtain that maximum amount—it was not reasonable for Mr. Aminov to misunderstand the Promotion or believe that he would instantly receive a bonus in the amount of $1,000 in site credits, regardless of the amount he deposited. *See Chung v. Igloo Products Corp.*, No. 20-CV-4926, 2022 WL 2657350, at *8 (E.D.N.Y. July 8, 2022) (dismissing claims under GBL §§ 349 and 350 because "the 'up to' phrase, together with the conspicuous language clarifying the conditions under which the ice retention claim would be valid, notifies a reasonable consumer that it will only achieve the advertised . . . claim under specific conditions"); *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 283–84 (S.D.N.Y. 2011) ("Defendant's representations as to the speed of its Internet service are qualified by the

phrase 'up to,' which would lead a reasonable consumer to expect that speeds could be less than the advertised '3x faster' and '100x faster speeds.'").

Second, Mr. Aminov alleges that the Promotion is misleading because he was unaware that a new user must "wager at least $25,000 with DraftKings within 90 days" to earn the full bonus. Compl. ¶ 33(ii); *id.* ¶ 36 (alleging that "DraftKings failed to fairly disclose that [a] consumer needed to . . . bet at least $25,000 to qualify for the $1,000 Deposit Bonus"). But the Promotional Terms that were displayed in advance clearly disclose that play-through requirement as well:

> Bonus funds will be awarded to the user according to the following play-through requirement: for every $25 played on DraftKings in DFS/Sportsbook/Casino, the user will receive $1 in bonus funds released into their player account (e.g., a $5,000 deposit requires *a user to play through a cumulative total of $25,000* in daily fantasy contests, sportsbook (-300 odds or longer), casino products, or any combination thereof to receive the maximum possible bonus amount of $1,000). The play-through requirement must be met *90 days from the date of first deposit* to receive maximum bonus. After such date, you are ineligible to earn any additional bonus funds as part of this promotion.

Wimbridge Decl. ¶ 4 & Ex. 1 (emphasis added). The fact that bonus credits are only "earned as you play" was also displayed prominently above the deposit section on users' screens. *Id.* Ex. 1.

Finally, Mr. Aminov alleges that the Promotion is misleading because a new user must bet "on daily fantasy contests, sportsbook bets with -300 odds or longer, and/or casino products." *See* Compl. ¶ 33(iii). Again, that requirement is fully disclosed in the Promotional Terms: "a $5,000 deposit requires a user to play through a cumulative total of $25,000 in daily fantasy contests, sportsbook (-300 odds or longer), casino products, or any combination thereof to receive the maximum possible bonus amount of $1,000." *See* Wimbridge Decl. ¶ 4 & Ex. 1. Thus, the three requirements that Mr. Aminov identified cannot render the Promotion misleading, because the Promotional Terms that were provided in advance plainly disclose that a user must comply with them to be eligible for the full bonus of $1,000 in site credits.

To the extent Mr. Aminov alleges that he could not be expected to read the Promotional Terms, that argument is unavailing. Users generally have a duty to read terms so long as the terms, or a hyperlink to them, are "reasonably conspicuous." *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) ("As long as the hyperlinked text was itself reasonably conspicuous . . . a reasonably prudent smartphone user would have constructive notice of the terms. While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice."); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 704 (2d Cir. 2023) ("A reasonably prudent internet or smartphone user is on inquiry notice of contractual terms where the terms are presented in a clear and conspicuous way."). A link to the Promotional Terms was conspicuously provided in the banner that Mr. Aminov himself copied into the Complaint, and they were displayed to every user on the deposit page. Compl. ¶ 31 ("View Terms"); Wimbridge Decl. ¶ 5 (terms were presented before user deposited funds). In addition, the key terms appeared at the top of the deposit page, requiring a user to scroll past them to deposit funds. Wimbridge Decl. Ex. 1.

The district court in *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-1058, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012), applied these principles in an analogous context to dismiss a claim under Sections 349 and 350. There, the plaintiff participated in an online sweepstakes that allowed him to enter to win $1,000 by completing a guest survey regarding his experience at an Applebee's restaurant. The plaintiff brought claims under Sections 349 and 350, alleging he understood he was competing for the prize drawing only against other Applebee's customers and for multiple prizes, when he was actually competing against the patrons of thirty businesses and for only two prizes. *See* 2012 WL 4482057, at *2. The receipt, which contained the offer, stated "[s]ee Website for rules/details." *Id.* at *6. The website contained a hyperlink to the official

rules. *Id.* The court determined that "[b]ecause the terms and conditions of the Sweepstakes were fully disclosed in the Official Rules, which consumers were directed to review by both the receipts given to customers and the Website, a reasonable consumer that read the Official Rules as directed would not have been misled." *Id.* Accordingly, the court ruled that the plaintiff was unable to satisfy the materially misleading element under Section 349. *See id.* The same is true here.

In sum, while Mr. Aminov claims he was misled by the Promotion, a full review of the Promotional Terms that he omitted from his Complaint confirms that DraftKings clearly and unambiguously disclosed each requirement of the Promotion. His claim fails on this basis alone.

**B.      Plaintiff Has Not Alleged An Injury That Is Cognizable on a Claim under Sections 349 and 350.**

Even if the Promotion were deceptive or misleading—and it is not—Mr. Aminov has utterly failed to plead any injury he allegedly suffered by virtue of creating a DraftKings account. His failure to meet this pleading requirement necessitates dismissal.

A plaintiff alleging a claim under Sections 349 and 350 must plead that he or she "has suffered injury by reason" of the allegedly deceptive practice. *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (quotation marks omitted). Mr. Aminov alleges that his injury was that he "would not have signed up for or used DraftKings" but for the alleged deception (Compl. ¶ 41), and, as relief, Mr. Aminov seeks a refund of a $500 *deposit* that he made, even though money he deposited remained his to wager or withdraw (*id.* ¶ 54 (requesting "the return of his initial deposit in full")). This attempt to allege injury fails for two reasons.

First, Mr. Aminov does not allege that he suffered a financial loss caused by the Promotion. "[S]ign[ing] up for" and "us[ing] DraftKings" is not a monetary loss, nor is depositing money into an account, where it remains within the account holder's control. In his

response to DraftKings' premotion letter, Mr. Aminov pivots to a vague contention, not made in the Complaint, that he "purchased the product or service," but *there is no allegation* that anything was purchased here. *See Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 258 (E.D.N.Y. 2019) ("An actual injury claim under [s]ection 349 typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.") (quotation marks omitted); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) (stating injury under Sections 349 and 350 may be alleged "by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations"). Rather, Mr. Aminov alleges that he took an action that not only cost him nothing (signed up and deposited funds, without losing them or his control over them), but in fact allowed him to *earn* $100 in site credits. Compl. ¶¶ 51–52.

Second, Mr. Aminov's allegations run afoul of the rule that Sections 349 and 350 only recognize "actual or pecuniary harm that is separate and apart from the alleged deception itself." *Meyer, Suozzi, Eng. & Klein, P.C. v. Higbee*, No. 18-CV-03353, 2020 WL 1140424, at *3 (E.D.N.Y. Mar. 9, 2020) (quoting *Derbaremdiker*, 2012 WL 4482057, at *7). Even if Mr. Aminov had made a purchase as a result of the Promotion (and there is no allegation that he did), it is not enough for a plaintiff to allege that he would not have made a purchase but for the alleged deception and request a refund, because that is *not* harm that is separate from the alleged deception itself. *See Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 92–93 (S.D.N.Y. 2010) ("allegations of pecuniary loss for the purchase of Defendant's products . . . do not state a claim for 'actual injury' under GBL § 349") (citing *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 7 (1998)).

Courts in New York have found that "actual injury" under GBL must include pecuniary or actual harm, and the deception cannot be both an act *and* injury. *See, e.g.*, *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 51 (1999); *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (2007). Indeed, in *Small* the plaintiffs alleged that the defendants used deceptive practices to sell their cigarettes and that they would not have bought the cigarettes but for the deceptive practices. *Small*, 94 N.Y.2d at 51. As relief, the plaintiffs sought only reimbursement for the costs of the cigarettes. *Id.* The court rejected the plaintiff's Section 349 claim, stating that "[t]heir theory contain[ed] no manifestation of either pecuniary or 'actual' harm" because it set forth "deception as both act and injury." *Id.* at 56. Similarly, the plaintiff in *Baron* sought a refund of the price of a medication on the ground that she would not have purchased the drug if the defendant had not engaged in deceptive practices. *Baron*, 42 A.D.3d at 629. The Appellate Division affirmed the holding that the plaintiff had failed to allege a cognizable injury because her claim set forth "deception as both act and injury, and thus, contain[ed] no manifestation of either pecuniary or actual harm." *Id.* (internal quotation marks omitted).

Here, the harm that Mr. Aminov has alleged is precisely the kind that the New York courts have ruled is not cognizable on a claim under GBL Sections 349 and 350. Just as in *Small* and *Baron*, Mr. Aminov claims he was harmed because he "would not have signed up for or used DraftKings" but for the alleged deception, and he seeks a refund of his deposit. *See* Comp. ¶¶ 41, 54 (requesting "the return of his initial deposit in full"). That is inadequate because it alleges "deception as both act and injury," just as the courts in *Small* and *Baron* found to be insufficient to establish actual injury. *See Small*, 94 N.Y.2d at 56; *Baron*, 42 A.D.3d at 629. Mr. Aminov does not allege that he purchased a service or good from DraftKings that was somehow deficient or worth less than he reasonably expected. *See, e.g.*, *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp.

3d 268, 280 (S.D.N.Y. 2021) ("To satisfy the injury element of a claim under [General Business Law sections] 349 or 350, 'a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'") (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)). Mr. Aminov's failure to adequately allege injury is another standalone basis to dismiss his consumer protection claims.

**C.** **Plaintiff Has Not Satisfied the Territoriality Requirement of GBL Sections 349 and 350.**

Mr. Aminov has not satisfied the "territorial" element of claims under GBL Sections 349 and 350 because he has failed to allege that the purportedly deceptive transaction occurred in New York. The New York Court of Appeals has interpreted the limiting phrase "in this state" in Sections 349 and 350 to require that "the transaction in which the consumer is deceived must occur in New York." *Goshen*, 98 N.Y.2d at 324–25 ("[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."); *4 K & D Corp.*, 2 F. Supp. 3d at 547 ("Sections 349 and 350 contain a 'territoriality' requirement: to state a claim under either provision, the deception of consumers must occur in New York."). Mr. Aminov merely alleges that he is a New York resident. That is insufficient to state a claim. *McVetty v. TomTom N. Am., Inc.*, No. 19-CV-4908, 2021 WL 965239, at *3 (S.D.N.Y. Mar. 13, 2021) ("The fact that [the plaintiff] is a citizen of New York is insufficient because the 'General Business Law analysis does not turn on the residency of the parties.'") (quoting *Goshen*, 98 N.Y.2d at 325); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 112 (E.D.N.Y. 2020) (no standing under GBL section 349 where "the transactions ha[d] no locus in New York beyond the [d]efendants' residency"). Mr. Aminov's GBL claims should be dismissed as a matter of law.

## II. Plaintiff's Causes of Action for Intentional Misrepresentation and Fraudulent Inducement Should Be Dismissed.

Mr. Aminov's claims for intentional misrepresentation and fraudulent inducement fail as a matter of law. "Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015). The elements of fraudulent inducement are similar. "To state a claim for fraudulent inducement under New York law, a plaintiff must allege: '(1) a material misrepresentation or omission that induced the party to sign the contract; (2) scienter; (3) reliance; and (4) injury.'" *City Calibration Centers Inc. v. Heath Consultants Inc.*, 727 F. Supp. 3d 332, 361 (E.D.N.Y. 2024) (quoting *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15-CV-9003, 2017 WL 3726754, at *4 (S.D.N.Y. Aug. 28, 2017)). "Plaintiff must show not only that he actually relied on the misrepresentations, but also that such reliance was reasonable." *Stuart Silver Associates, Inc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 98 (1997).

Mr. Aminov's fraud-based claims fail for the following reasons: (1) there was no false statement or omission because he was provided with the Promotional Terms, which fully disclosed the Promotion's requirements; (2) the Complaint contains no allegation that the Promotion caused him to create a DraftKings account; and (3) the Complaint does not allege that Mr. Aminov lost money or otherwise suffered any actionable injury due to the Promotion. The fraudulent inducement claim fails for the additional reason that Mr. Aminov does not allege a contract between the parties.

**A.      Plaintiff Has Not Pled A False Representation Or A Material Omission.**

Mr. Aminov's claims for intentional misrepresentation and fraudulent inducement fail because Mr. Aminov did not plead a misrepresentation or omission of fact. The Complaint alleges that the Promotion was misleading by omission because certain requirements had to be satisfied before a user would be eligible to receive $1,000 in site credits.[3] As explained above, however, the Promotion's requirements were accurately and fully disclosed to Mr. Aminov and were therefore not concealed. In his Complaint, Mr. Aminov selectively presents only the banner portion of the Promotion while omitting all of the relevant Promotional Terms. Compl. ¶ 31; Wimbridge Decl. ¶¶ 4–6. Each of the three requirements that Mr. Aminov claims rendered the Promotion misleading were, in fact, fully disclosed to him and other users in the Promotional Terms. *See, e.g.*, Compl. ¶¶ 31–35; Wimbridge Decl. ¶¶ 4–6.

In support of his two fraud-based claims, Mr. Aminov apparently relies on the same alleged omissions that support his consumer-protection claim under GBL Sections 349 and 350. But as explained above, the three requirements were disclosed, not omitted. *See supra* Part I.A. To reiterate, Mr. Aminov alleges the Promotion was misleading because it was not clear to him that 1) a new user was required to "deposit at least $5,000 in cash with DraftKings" to qualify for $1,000 in bonus funds; 2) a new user must wager at least $25,000 over a 90 day play through period to achieve the full bonus amount; and 3) a new user must wager on specific products with

---

[3] In the portion of the Complaint specifically concerning the claim for intentional misrepresentation, Mr. Aminov alleges for the first and only time that DraftKings's Promotion "advertised its sign-up offers to indicate that bets placed on DraftKings service would be risk free." Compl. ¶ 82. This allegation is unsupported by factual allegations. The complaint otherwise does not concern a "risk free" promotion, and it does not identify any statement allegedly made by DraftKings regarding risk or the lack of risk. Nor does he allege any risk that could have applied here, given that his $500 deposit was under his control, and he was free to withdraw it upon realizing he was not credited with $1,000 in site credits.

odds limitations. Compl. ¶ 33. As noted above, all of these requirements were clearly disclosed by the Promotional Terms, which were available to Mr. Aminov. Wimbridge Decl. Ex. 1.[4] Mr. Aminov's claims for intentional misrepresentation and fraudulent inducement fail for lack of a misrepresentation or omission.

B.    **Plaintiff Has Not Alleged that He Relied on the Allegedly Misleading Statement.**

Mr. Aminov has similarly not pled that he relied on alleged misleading statements. "To plead common law fraud, a plaintiff must allege with particularity that it actually relied upon the supposed misstatements." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014). A plaintiff alleges actual reliance by alleging that the defendant's conduct was "an 'essential or inducing cause'" of the plaintiff's actions. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 278 (2d Cir. 1992) *abrogated on other grounds as recognized in Gerosa v. Savasta & Co.*, 329 F.3d 317, 322–23 (2d Cir. 2003); *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, 449 F. Supp. 3d 385, 399 (S.D.N.Y. 2020) (Plaintiffs "must plead that they actually relied on the alleged misrepresentations, specifically that the misrepresentation was a 'substantial factor' in their decision.").

Mr. Aminov does not allege that he relied on the "$1,000 Deposit Bonus" banner when he chose to create a DraftKings account. He alleges only that he *saw* the banner before he created

---

[4] If Mr. Aminov claims that he failed to read the Promotional Terms that were presented to him, he cannot establish reasonable reliance. *See Transnational Mgmt. Sys. II, LLC v. Carcione*, No. 14-CV-2151, 2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016) ("In New York, it is well settled that a plaintiff cannot establish justifiable reliance when, 'by the exercise of ordinary intelligence it could have learned of the information it asserts was withheld.'"); *Morby v. Di Siena Associates LPA*, 291 A.D.2d 604, 605–606 (2002) ("Having failed to read the release before signing it, plaintiff simply cannot establish the essential element of justifiable reliance."). "In view of th[e] accurate disclosure" made in the Terms, "a person of 'ordinary intelligence' could have learned" of the requirements that a user had to meet to obtain the maximum bonus. *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199 (E.D.N.Y. 2018).

an account, not that it induced him to take any action that he would not otherwise have taken: "Plaintiff recalls viewing this and similar advertisements online on DraftKings [*sic*] website and mobile app prior to signing up for DraftKings in or around January 2022." Compl. ¶ 32. He also alleges that if he had been "informed" of the "impossible odds of obtaining the $1,000 Deposit Bonus," he "would not have signed up for DraftKings." *Id.* ¶ 6. But a failure to disclose *odds* is not what Mr. Aminov alleges was misleading; rather, Mr. Aminov says the Promotion was misleading because it allegedly failed to disclose the three deposit and wagering requirements. *Id.* ¶ 33; *see also id.* ¶ 35 (giving examples of allegedly proper disclosures, neither of which provide odds). Because the Complaint contains no allegation that the allegedly misleading statement is what caused Mr. Aminov to create a DraftKings account, Mr. Aminov fails to adequately plead the fraud element of reliance.

### C. Plaintiff Has Not Pled Fraud Damages Because He Does Not Allege That He Lost Money.

Mr. Aminov has not alleged any actionable damages related to his fraud claims. "Failure to adequately plead damages is fatal to a claim of fraud." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 190 (2d Cir. 2023) (citing *Sw. Invs. Grp., LLC v. JH Portfolio Debt Equities, LLC*, 169 A.D.3d 1510, 1511 (2019)). Damage is "actual pecuniary loss sustained as the direct result of the wrong." *Sw. Invs. Grp., LLC*, 169 A.D.3d at 1511 (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)). A pleading "is fatally deficient" where, as here, it does "not assert compensable damages resulting from defendants' alleged fraud." *Id.* (quoting *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 143 (2017)).

As explained above, the Complaint contains no allegation that Mr. Aminov suffered any monetary loss as a result of the Promotion. To the contrary, the Complaint alleges that Mr. Aminov actually *earned* a credit equivalent to $100 due to the Promotion. According to the

Complaint, when Mr. Aminov "signed up for DraftKings and made an initial deposit of $500 on January 27, 2022," DraftKings "credited him a Deposit Bonus of . . . $100." Compl. ¶¶ 51–52. He does not allege that he lost his $500 initial deposit or his site credit, or that he somehow lost control of his ability to withdraw or play through the funds at his discretion. Because Mr. Aminov has failed to allege he suffered a loss—a required element of his second and third causes of action—the two fraud-based claims should be dismissed.

### D. Plaintiff's Cause of Action of Fraudulent Inducement Should Be Dismissed Because He Has Alleged No Contract Between the Parties.

Fraudulent inducement differs from intentional misrepresentation only in that the former applies specifically where a party has been defrauded into entering a contract. *See City Calibration Centers Inc.*, 727 F. Supp. 3d at 361 (explaining that to state a claim for fraudulent inducement under New York law, a plaintiff must, among other things, "allege a material misrepresentation or omission that induced the party to sign the contract") (citation and quotation marks omitted); *see also Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20 Civ. 7933, 2021 WL 4332258, at *12 (S.D.N.Y. Sept. 22, 2021) ("[F]raudulent inducement involves a misrepresentation of present fact, not of future intent, collateral to a contract and used to induce the defrauded party to sign the contract.").

Mr. Aminov has not alleged that the parties entered a contractual agreement that harmed him. The Complaint does not mention a contract. Mr. Aminov alleges only that he was induced to "creat[e] [an] account[]," Compl. ¶ 92, without alleging an accompanying contract or an injury resulting from a contract. Thus, Mr. Aminov has failed to plead the elements of fraudulent inducement, and the third cause of action should be dismissed.[5]

---

[5] If Mr. Aminov argues that the Promotional Terms were a contract between the parties (which he does not allege), those terms set forth the requirements of the Promotion of 1) a $5,000

**III.** **Plaintiff's Cause of Action for "Quasi Contract/Unjust Enrichment/Restitution" Should Be Dismissed As Duplicative of His Other Claims.**

Mr. Aminov's claim for quasi contract, unjust enrichment, and/or restitution is duplicative of his other causes of action and should be dismissed. "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (dismissing unjust enrichment claim as duplicative of deceptive advertising claims under New York GBL sections 349 and 350, negligent misrepresentation, and fraud) (internal citations omitted); *see also Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 45–46 (S.D.N.Y. 2023) (dismissing claim for unjust enrichment that was "brought as an alternative theory" where the claim "rel[ied] on a similar set of facts as the plaintiff's other claims"); *McTyere v. Apple, Inc.*, 663 F. Supp. 3d 247, 258 (W.D.N.Y. 2023) ("[C]ourts in the Second Circuit have consistently held that unjust enrichment claims" should be dismissed when those claims "are duplicative of [General Business Law] claims.") (alterations in original) (quoting *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021)); *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (unjust enrichment claim should be dismissed if duplicative of another "conventional contract or tort claim" or a claim under Sections 349 and 350). That is because "unjust enrichment is not a catchall cause of action to be used when others fail. Rather, the claim is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id*. (cleaned up).

---

deposit to achieve the full bonus of $1,000 in site credits, 2) a playthrough period, and 3) specific odds requirements.

When analyzing whether a plaintiff's unjust enrichment claim is duplicative of other claims, the "critical inquiry is whether the factual allegations supporting each claim are the same, not whether the claims provide identical relief." *Greene v. Clean Rite Centers, LLC*, 714 F. Supp. 3d 134, 150 (E.D.N.Y. 2024) (dismissing unjust enrichment claim as duplicative of claims under Massachusetts and New York consumer protection laws because plaintiff's "allegations comprise the very same conduct that underlies Plaintiff's statutory claims").

Mr. Aminov's fourth cause of action is entirely duplicative of his other claims. It rests on the same purportedly "misleading misrepresentations to Plaintiff and Class members" that Mr. Aminov claims were made in the Promotion and "induce[d] them to create accounts and place bets." Compl. ¶ 101. The same allegations regarding misleading misrepresentations support his claim under Sections 349 and 350, his intentional misrepresentation claim, and his fraudulent inducement claim. *Id.* ¶¶ 67-68, 84, 91–92. His fourth cause of action should be dismissed.

## IV. **Plaintiff Lacks Standing to Seek Injunctive Relief.**

Finally, Mr. Aminov purports to seek unspecified injunctive relief without making the requisite showing of imminent future harm. Compl. ¶¶ 8, 79. To show Article III standing, a plaintiff must satisfy three criteria, one of which is "injury in fact – an invasion of a legally protected interest which is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). "In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future – otherwise there is no remedial benefit that he can derive from such judicial decree." *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 222 (E.D.N.Y. 2015) (quotation marks omitted). "[P]ast purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). When plaintiffs have become aware of

the alleged misrepresentations, "there is no danger that they will again be deceived by them." *Hesse*, 463 F. Supp. 3d at 465–66.

The Complaint contains no allegations of imminent future harm that could support standing to seek injunctive relief. Mr. Aminov cannot plausibly allege that he intends to enter the Promotion again in the future, given that he repeatedly alleges that the Promotion was specifically targeted at and limited to "new" DraftKings users. Even if he did somehow enter the Promotion again—which would be a breach of DraftKings' Terms of Use and circumvent DraftKings' controls prohibiting existing customers from creating multiple accounts—he would do so "with exactly the level of information" that he now possesses and could not claim to be deceived or harmed. *See Berni*, 964 F.3d at 147–48. He has no standing to seek injunctive relief.

## V.     **The Court Should Deny Leave to Amend.**

"Leave to amend may be denied if the proposed amendment would be futile" and would not "cure prior deficiencies." *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019). The Court should deny leave to amend because Mr. Aminov cannot amend in a manner that would survive dismissal. Mr. Aminov's first, second, and third causes of action are all premised on the omission of the very information that is disclosed in the Promotional Terms. Thus, the existence of the Promotional Terms conclusively defeats those claims by preventing Mr. Aminov from alleging a deceptive or misleading practice or a material omission. Nor can Mr. Aminov cure his fourth cause of action, which is a carbon copy of his other claims and therefore fatally duplicative as a matter of law.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed without leave to amend.

DATED:  February 3, 2025          Respectfully Submitted,


By:      <u>    /s/ Richard R. Patch         </u>
Richard R. Patch *(pro hac vice)*
Clifford E. Yin *(pro hac vice)*
Christopher J. Wiener *(pro hac vice)*
Sarah E. Peterson *(pro hac vice)*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:  ef-rrp@cpdb.com
        ef-cey@cpdb.com
        ef-cjw@cpdb.com
        ef-sep@cpdb.com

Alan Schoenfeld
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-937-7294
Email:   alan.schoenfeld@wilmerhale.com

Attorneys for Defendant
DraftKings Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I, Richard R. Patch, an attorney for DraftKings Inc., hereby certify that on this 3rd day of February, 2025, a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DRAFTKINGS INC.'S MOTION TO DISMISS** was served via email and mail, on the following:

Andrew Shamis
Leanna Alexis Loginov
Edwin E. Elliot
SHAMIS & GENTILE P.A.
14 N.E. 1st Ave, Suite 705
Miami, FL 33132
Telephone: 305-479-2299
Facsimile: 786-623-0915
Email:  ashamis@shamisgentile.com
        lloginov@shamisgentile.com
        edwine@shamisgentile.com

*Attorneys for Plaintiff*

Jeffrey D. Kaliel
Sophia Goren Gold
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: 202-350-4783
Email:  jkaliel@kalielpllc.com
        sgold@kalielgold.com

*Attorneys for Plaintiff*

Adam A. Schwartzbaum
EDELSBERG LAW, PA
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
Email:  adam@edelsberglaw.com

*Attorneys for Plaintiff*

                                        */s/ Richard R. Patch*
                                        Richard R. Patch

1