UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

NERYE AMINOV, *individually and on behalf of
all others similarly situated*,

                               Plaintiff,

              v.

DRAFTKINGS, INC.,

                               Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
24-CV-8472 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Nerye Aminov commenced this class action on behalf of himself and others

similarly situated consumers against Defendant DraftKings, Inc. ("DraftKings") on September

30, 2024, in the Supreme Court of the State of New York, County of Queens.  (*See* Summons

and Complaint ("Compl."), annexed to Notice of Removal as Exhibit A, Docket Entry No. 1-2.)

Plaintiff asserts state law claims on behalf of the New York subclass under sections 349 and 350

of the New York General Business Law ("GBL") and claims on behalf of all classes for

intentional misrepresentation, fraudulent inducement, and unjust enrichment.  (*Id.*)  Plaintiff

alleges that Defendant, a gambling and entertainment corporation, engaged in deceptive

marketing to increase its sports betting platform userbase through a fraudulent and misleading

promotion promising new users a $1,000 deposit bonus for signing up to its platform (the

"Promotion").  (*Id.*)  On December 11, 2024, Defendant removed the case to the United States

District Court, Eastern District of New York.  (Notice of Removal, Docket Entry No. 1.)

Currently before the Court is Defendant's motion to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; Plaintiff opposes the motion.[1]  For the reasons explained below, the Court grants Defendant's motion.

## I.    Background

Plaintiff is a citizen of New York and resides in Queens County.[2]  (Compl. ¶ 9.) Defendant is a Nevada corporation with its principal place of business in Massachusetts.  (*Id.* ¶ 10.)  Defendant is licensed under the New York Gaming Commission and since 2022, Defendant has operated mobile betting platforms in New York.  (*Id.*)

### a.    The deposit bonus promotion

Plaintiff alleges that beginning in 2022, Defendant engaged in a marketing campaign in New York to become an early leader as the state legalized online sports betting.  (*Id.* ¶¶ 29–31.) As part of its campaign through 2023, Defendant maintained the Promotion where it "advertised the '$1,000 Deposit Bonus' as a reward for signing up for its sportsbook platform" using language such as, or similar to, "Join DraftKings Sportsbook Get $1,000 Deposit Bonus!"  (*Id.* ¶ 31.)  Defendant advertised the Promotion on its mobile app and website.  (*Id.* ¶ 32.)

According to the Promotion's terms and conditions, the Promotion had three requirements for a new user to qualify for the $1,000 deposit bonus.  (*Id.* ¶ 33.)  The new user had to (1) "immediately deposit at least $5,000 in cash with DraftKings;" (2) "wager at least $25,000 with DraftKings within 90 days;" and (3) the wagers had to be on "daily fantasy

---

[1]  (*See* Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 19; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 20; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 21; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 22.)

[2]  The Court assumes the truth of the facts alleged in the Complaint for the purpose of deciding Defendant's motion.

contests, sportsbook bets with -300 odds or longer, and/or casino products," ("Promotional Terms").[3]  (*Id.* ¶ 33.)

Upon accessing the Promotion or when depositing funds, Defendant displayed the Promotional Terms.  (Promotional Terms Screenshot, annexed to Decl. of Gary Wimbridge ("Wimbridge Decl") as Ex. 1, Docket Entry No. 21.)  As part of the process for depositing funds into a DraftKings' account, consumers were confronted with the mobile deposit screen depicted below.

---

[3]  In support of its motion to dismiss, Defendant relies on the Promotional Terms and screenshots of the deposit screen to show the requirements necessary to qualify for the deposit bonus.  On a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint" but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see Nicosia  v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *see also, e.g.*, *Glob. Network Commc'ns., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (finding reversible error where the district court considered defendant's submission of a trial transcript in an unrelated proceeding and relied on it to "make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint").  Plaintiff references the Promotional Terms in the Complaint (Compl. ¶¶ 31, 33) and in his opposition to the motion (*see* Pl.'s Opp'n 1), to argue that a reasonable user could not have been expected to understand the risk involved with the Promotion.  Plaintiff also argues that the Promotional Terms were not conspicuous to the consumers.  (Pl.'s Opp'n 13.)  The Court therefore considers the Promotional Terms and screenshots of the deposit screen as integral to the Complaint.



(*Id.*)  Close to the top of the deposit screen above where a consumer is directed to select a deposit amount, the DraftKings page prominently states that users "will receive a **20% deposit bonus up to $1,000!** Bonus funds are earned as you play." (*Id.*)  By scrolling down the same screen, as depicted below, the Promotional Terms are displayed in their totality, in a similar font size to all the other text on the deposit screen.



(*Id.*)  The Promotional Terms specify that the "[b]onus amount is equal to 20% of that deposit amount, not to exceed $1,000" and further explain that "the user must deposit $5,000 to be eligible to receive the maximum possible bonus amount of $1,000."  (*Id.*)  They also specify the requirements to earn the maximum bonus.  Specifically, that "a $5,000 deposit requires a user to play through a cumulative total of $25,000 in daily fantasy contests, sportsbook (-300 odds or longer), casino products, or any combination thereof to receive the maximum possible bonus amount of $1,000."  (*Id.*)  The Promotional Terms further state that to receive the bonus, the

requirements must be met within ninety days. (*Id.*) In its online promotional advertisements, Defendants referenced the Promotional Terms by stating "JOIN DRAFTKINGS SPORTSBOOK GET A $1,000 DEPOSIT BONUS!" followed by "View Terms >" in smaller font and two buttons for logging in or signing up. (Compl. ¶¶ 31, 32.)

> **b.    Plaintiff's experience**

Plaintiff alleges that he "signed up for DraftKings and made an initial deposit of $500 on January 27, 2022" after seeing advertisements for the Promotion online on the DraftKings website and mobile app. (*Id.* ¶¶ 32, 51.) Defendant "credited him a [d]eposit [b]onus of . . . $100." (*Id.* ¶ 52.) Plaintiff did not know or understand the requirements tied to the Promotion and would not have made the "initial deposit had he known the truth about the [Promotion]." (*Id.* ¶ 51, 53.)

Plaintiff seeks damages from Defendant for inducing class members to sign up and use its sports betting platform through its allegedly misleading and fraudulent Promotion promising new users a $1,000 deposit bonus upon signup. (*Id.* ¶ 59.)

## II.    Discussion

> **a.    Standard of review**

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the Complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *New Yorkers for Religious Liberty, Inc. v. New York*, 125

F.4th 319, 327 (2d Cir. 2024) (quoting *Twombly*, 550 U.S. at 570).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678; *Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

> **b.  GBL §§ 349 and 350 claims**

Defendant argues that Plaintiff's claims under GBL §§ 349 and 350 must be dismissed because Plaintiff fails to (1) plead a deceptive practice; (2) allege an actionable injury; and (3) allege facts sufficient to meet the territoriality requirement of GBL §§ 349 and 350.  (Def.'s Mem. 1–2.)  First, Defendant contends that "every aspect of the Promotion that [Plaintiff] alleges [is] misleading [is], in fact, disclosed in full in the Promotional Terms before [Plaintiff] deposited money and placed a wager."  (*Id*. at 7.)  Defendant argues that the Promotional Terms were "prominently hyperlinked" in its advertisements and "displayed to customers," on its deposit screen, (Def.'s Reply 6), and "clearly and conspicuously disclose[], in plain English, *all* of the conditions that a new user must meet to receive any deposit bonus" including the ones that Plaintiff alleges he did not understand, (Def.'s Mem. 1).  Based on the fully disclosed terms, Defendant argues that the Promotion is not misleading and there is no "requirement under New York law that a consumer assent to a disclosure through affirmative conduct."  (Def.'s Reply 4

(citation and internal quotation marks omitted).)  Second, Defendant contends that Plaintiff has

not alleged an injury under GBL §§ 349 and 350 because (1) Plaintiff has not shown that the

Promotion "caused him to lose money"; (2) Plaintiff "does not claim to have bought anything

from DraftKings," "let alone overpaid"; and (3) even if the Promotion was deceptive, Plaintiff

failed to allege an injury "separate and apart from the alleged deception."  (Def.'s Mem. 2; Def's

Reply 8.)  In support, Defendant argues that making a "deposit into an account is not a loss, but

rather, it is a transfer of funds that remain in the control of the account holder and which he is

allowed to withdraw."  (Def.'s Mem. 2.)  Defendant also argues that Plaintiff did not suffer an

injury as Plaintiff earned $100 due to the Promotion.  (Def.'s Reply 7.)  Finally, Defendant

contends that Plaintiff fails to satisfy the territorial requirement of GBL §§ 349 and 350 by not

alleging that he "entered the Promotion while in New York."  (Def.'s Mem. 2.)

Plaintiff argues that he has sufficiently alleged a cause of action for violation of GBL §§

349 and 350 because Plaintiff (1) alleges a deceptive practice; (2) alleges a cognizable injury;

and (3) satisfies the "territoriality" requirement of GBL §§ 349 and 350.  (Pl.'s Opp'n 10–18.)

First, Plaintiff argues that he sufficiently alleges the misleading nature of the Promotion and the

related advertisements "because, *inter alia*, the advertisements clearly promise that new

customers who joined DraftKings would receive a $1,000 reward by simply making a deposit"

and these customers could not reasonably understand the "actual costs and risks" associated with

the Promotion.  (*Id*. at 11.)  Plaintiff contends that the Court should not consider the Promotional

Terms because Defendant has not shown that Plaintiff was "provided with or assented to them,"

and even if the Promotional Terms are considered, it does not "provide . . . grounds for

dismissal."  (*Id.*)  Plaintiff argues that the disclosure does not cure the misleading statements

because it is not conspicuous, it is "generally obscure[d] by other distracting elements on [the]

DraftKings website and mobile app," and there is no mechanism "to verify that a customer has *actually* read the terms or unambiguously" agreed to them.  (*Id.* at 13–14 (first alteration in original) (citations and internal quotation marks omitted).)  Second, Plaintiff contends that he has properly pleaded a cognizable injury separate from the "deceptive nature of DraftKings' advertising itself."  (*Id.* at 16.)  In support, Plaintiff argues he signed up for a DraftKings account because of DraftKings' advertising and was harmed when he "open[ed] [the] account and deposited money . . . but did not receive the $1,000," and that he "incurred damage in the amount of his initial $500 deposit."  (*Id.*)  Finally, Plaintiff argues that the "territorial" requirement is satisfied because Plaintiff is a New York citizen who entered an online transaction, and he alleges that "DraftKings' deceptive advertising was disseminated through New York state."  (*Id.* at 18 (citation omitted).)

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349; *La Rosa v. Abbott Lab'ys*, No. 24-1575, 2025 WL 841687, at *1 (2d Cir. Mar. 18, 2025) (quoting N.Y. Gen. Bus. Law § 349).  GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 350.  "Section 350 of the GBL prohibits '[f]alse advertising in the conduct of any business, trade or commerce,' and is analyzed under the same reasonable consumer standard as Section 349."  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (alterations in original) (citation omitted); *see also Sheiner v. Supervalu Inc.*, No. 22-CV-10262, 2024 WL 2803030, at *2 (S.D.N.Y. May 28, 2024) ("[Section 350 of the GBL . . . is analyzed under the same 'reasonable consumer' standard as [section] 349"); *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) ("'The standard for recovery under . . . § 350, while

specific to false advertising, is otherwise identical to [§] 349,' and therefore the [c]ourt will merge its analysis of the two claims" (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 & n.1 (2002))).  To assert a claim under either section, "a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *see also Yodice v. Tuoro Coll.*, No. 21-2986, 2024 WL 3466546, at *2 (2d Cir. July 19, 2024) (similar); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" (quoting *Koch v. Acker, Merrall & Condit Co.*, 8 N.Y.3d 940, 944 (2012))); *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10 (2020) ("We have explained that, to state a claim under sections 349 or 350, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" (quoting *Koch*, 18 N.Y.3d at 941)).  GBL §§ 349 and 350 are "'directed at wrongs against the consuming public' and are designed to 'protect people from consumer frauds.'" *Yodice*, 2024 WL 3466546, at *2 (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24–25 (1995)).[4]

---

[4] "[C]laims under GBL §§ 349 [and] 350 are 'not subject to the pleading-with-particularity requirements of Rule 9(b).'" *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (citation omitted) (alterations in original); *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014) (same); *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 359 (E.D.N.Y. 2014) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)); *see also Leonard v. Abbott Lab'ys*,

Under New York law, a deceptive act is one that is "likely to mislead a reasonable consumer acting reasonably *under the circumstances*." *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) (citations omitted and emphasis added); *Orlander*, 802 F.3d at 300 (citation omitted and emphasis added); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.  The entire mosaic is viewed rather than each tile separately." (internal quotation marks omitted) (first quoting *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014); and then quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06-CV-14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007))); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label."  (alteration in original) (citation and internal quotation marks omitted)); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (conducting the reasonable consumer analysis by "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole"); *see La Rosa*, 2025 WL 841687, at *1 ("[I]n order to survive a motion to dismiss, 'a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018))); *see also Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-1058, 2012 WL 4482057, at n.8 (E.D.N.Y. Sept. 26, 2012) ("The standard established by the

---

*Inc.*, No. 10-CV-4676, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) (considering case law and discerning a categorical rule that GBL § 349 claims, "regardless of whether they 'sound in fraud,' or are premised on specific misrepresentations rather than an 'advertising scheme,' are not subject to the heightened pleading requirement of Rule 9(b).").

New York Court of Appeals for determining whether conduct is materially misleading is that of a reasonable consumer, which means defendant's liability under Section 349 does not hinge on what this specific plaintiff did or did not review before entering the [s]weepstakes." (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999))), *aff'd*, 519 F. App'x 77 (2d Cir. 2013); *see also Hines v. Overstock.com, Inc.*, No. 09-CV-991, 2013 WL 4495667, at *10 (E.D.N.Y. Aug. 19, 2013) (quoting *Gaidon*, 94 N.Y.2d at 344)).

"'[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception.'" *McTyere v. Apple, Inc.*, 663 F. Supp. 3d 247, 255 (W.D.N.Y. Mar. 21, 2023) (alteration in original) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)); *id.* ("A claim under [GBL] sections 349 or 350 therefore may not be viable '[w]here a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to [the] plaintiff." (second and third alterations in original) (citation omitted)); *Congregation Yetev Lev D'Satmar, Inc. v. Engie Power & Gas, LLC*, 683 F. Supp. 3d 238, 251 (E.D.N.Y 2023) ("Courts have found allegations of deceptive practices to be implausible where defendants have 'actually disclosed the very practices that were alleged to be deceptive.'" (citing *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017))); *Silvester v. Selene Fin., LP*, No. 18-CV-2425, 2019 WL 1316475, at *9 (S.D.N.Y. Mar. 21, 2019) ("Courts have been reluctant to find a practice is materially misleading . . . if [the] [d]efendant fully disclosed the terms and conditions of the alleged deceptive transaction that caused harm to [the] [p]laintiff." (citing *Derbaremdiker*, 2012 WL 4482057, at *4); *see also Rodriguez v. Cheesecake Factory Inc.*, 16-CV-2006, 2017 WL 6541439, at *3 (E.D.N.Y. Aug. 11, 2017) ("Courts generally consider a practice not to be misleading within the meaning of §

349 when a plaintiff is provided with all the information necessary to understand the practice and its consequences — a concept sometimes referred to as 'full disclosure.'" (citations omitted)).

Under GBL §§ 349 and 350, "a monetary loss is an actionable injury." *Yang Chen v. Hiko Energy, LLC*, No. 14-CV-1771, 2014 WL 7389011, at *5 (S.D.N.Y. Dec. 29, 2014) (citing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (internal quotation marks omitted). The alleged "deception itself cannot satisfy the injury prong in a GBL §§ 349, 350 or common law fraud claim." *DeCostanzo v. GlaxoSmithKline PLC*, 643 F. Supp. 3d 340, 352 (E.D.N.Y. Nov. 29, 2022) (citations omitted); *Meyer, Suozzi, Eng. & Klein, P.C. v. Higbee*, No. 18-CV-3353, 2020 WL 1140424, at *3 (E.D.N.Y. Mar. 9, 2020) (GBL §§ 349 and 350 "only permits 'actual or pecuniary harm that is separate and apart from the alleged deception itself.'" (quoting *Derbaremdiker*, 2012 WL 4482057, at *7)); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 113 (E.D.N.Y. Feb 13, 2020) ("[T]he complaint must plausibly allege that the plaintiff suffered 'actual or pecuniary harm that is separate and apart from the alleged deception itself.'" (quoting *Derbaremdiker*, 2012 WL 4482057, at *7)); *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. Sept. 6, 2012) ("[A] section 349 claim will not lie where the deceptive act itself was the only injury."), *aff'd*, 531 F. App'x 110 (2d Cir. 2013).

Further, there is a "territorial" element to claims under GBL §§ 349 and 350.  The New York Court of Appeals has interpreted the limiting phrase "in this state" to require that "the transaction in which the consumer is deceived must occur in New York." *Goshen*, 98 N.Y.2d at 324; *see La Rosa v. Abbott Lab'ys*, No. 22-CV-5435, 2024 WL 2022297, at n.7 (E.D.N.Y. May 7, 2024) (quoting *Dorris v. Danone Waters of Am.*, 711 F. Supp. 3d 179, 187 (S.D.N.Y. Jan. 10, 2024)), *aff'd*, No. 24-CV-1575, 2025 WL 841687 (2d Cir. Mar. 18, 2025); *Dorris*, 711 F. Supp. 3d at 187 ("The territoriality requirement 'must be pleaded in order for a claim brought under

[Sections 349 and 350] to survive.'" (alterations in original) (quoting *Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *4 (S.D.N.Y. May 5, 2023))); *McVetty v. TomTom N. Am., Inc.*, No. 19-CV-4908, 2021 WL 965239, at *3 (S.D.N.Y. Mar. 13, 2021); *Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 128 (W.D.N.Y. 2019) ("Sections 349 and 350 are not intended to regulate New York businesses or protect New York residents solely on the basis of their residency; they are intended to police consumer transactions that 'take place in New York State,' regardless of the residency of the parties." (quoting *Goshen*, 98 N.Y.2d at 325)), *modified on reconsideration*, No. 15-CV-701, 2019 WL 11287650 (W.D.N.Y. Nov. 22, 2019); *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 416 (S.D.N.Y. 2018) (dismissing claims arising under GBL §§ 349 and 350 because there were no allegations that the alleged deceptive transaction involving plaintiff occurred in New York); *see also 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547 (S.D.N.Y. 2014) ("Sections 349 and 350 contain a 'territoriality' requirement: to state a claim under either provision, the deception of consumers must occur in New York." (citing *Goshen*, 98 N.Y.2d at 325)); *Goshen*, 98 N.Y.2d at 325 ("[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."); *see also Cruz v. FXDirectDealer*, LLC, 720 F.3d 115, 124 (2d Cir. 2013) (recognizing that a plaintiff stated a claim under GBL §§ 349 and 350 if "some part of the underlying transaction . . . occur[ed] in New York" (alterations in original) (quoting *Mountz v. Glob. Vision Prods., Inc.*, 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003)));

Plaintiff fails to allege that the Promotion could deceive a reasonable consumer because the Promotional Terms fully disclosed the requirements to be eligible for the full value of the

Promotion in a conspicuous manner.[5]  Close to the top of the deposit screen before selecting the

deposit amount, the DraftKings page prominently stated, in bold, that users "will receive a **20%**

**deposit bonus up to $1,000!** Bonus funds are earned as you play."  (Promotional Terms

Screenshot*.*)    Further down on the same screen, the Promotional Terms were conspicuously

displayed, in their entirety, in a similar font size as all the other text on the deposit screen.  (*Id.*)

Prior to depositing funds into a DraftKings account, a reasonable consumer would have seen the

Promotional Terms that were displayed on the deposit screen.  (*Id.*);  *Dimond v. Darden*

*Restaurants, Inc.*, No. 13-CV-5244, 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014) (holding

that the plaintiff failed to state a GBL § 349 claim because the terms and conditions were

"conspicuously indicated on the menu so that each patron was expressly informed as to the cost

of dining at the [r]estaurants prior to voluntarily placing his or her order."); *Derbaremdiker*, 2012

WL 4482057, at *6 (finding terms were "fully disclosed" where receipt contained language in

the same size font as surrounding text and directed the reader to a website that contained the

sweepstakes rules).  Thus, the Promotional Terms were fully disclosed to Plaintiff.  *See Wright*,

439 F. Supp. 3d at 117–18 (dismissing GBL § 349 claim for failure to allege a materially

---

[5]  As a threshold issue, contrary to Plaintiff's claim, GBL §§ 349 and 350 do not require evidence that Plaintiff was "provided with or assented to" the Promotional Terms.  (Pl.'s Opp'n 11); *Derbaremdiker* 2012 WL 4482057, at n.8 (stating that plaintiff failed to show there was a legal obligation "that defendant should have required an entrant to review the [o]fficial [r]ules and accept its terms and conditions prior to entering the Sweepstakes."); *Hines v. Overstock.com, Inc.*, No. 09-CV-991, 2013 WL 4495667, at *10 (E.D.N.Y. Aug. 19, 2013) (holding that "the [c]ourt's analysis as to whether the alleged omission of the 'Return Fee' was 'materially misleading' does not hinge on what th[e] [p]laintiff reviewed or did not review, but on whether the omission is likely to mislead a reasonable consumer acting reasonably under the circumstances."); *see also Campbell v. Drink Daily Greens, LLC*, 16-CV-7176, 2018 WL 4259978 (E.D.N.Y. Sept. 4, 2018) (stating that under §§ 349 and 350, materiality is "'objective' — that is, [w]hether a representative or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." (citations omitted and third alteration in original)).

misleading practice because the contest rules were fully disclosed and "a reasonable consumer would [not] be deceived into believing that purchasing a product from [the defendant] would increase their chances in a sweepstakes, lottery, or drawing" when the contest's terms of use clearly stated that "no purchase or payment [is] necessary to enter" and "buying won't help you win").

Moreover, a reasonable consumer would not be misled to think that merely signing up for a DraftsKings account would entitle them to the full $1,000 deposit bonus when the Promotional Terms specified that users can "receive *up to* $1,000 in bonus funds." (*See* Promotional Terms Screenshot (emphasis added).) The Promotional Terms further clarify that for a consumer to be entitled to the full deposit bonus, they must make a "$5,000 deposit," place $25,000 in bets "in daily fantasy contests, sportsbook (-300 odds or longer), casino products, or any combination thereof," and these bets must be made within "90 days from the date of deposit." (*Id.*) The Court finds that the "up to" phrase, together with the language clarifying the conditions under which a consumer would be entitled to the full $1,000 deposit bonus, notifies a reasonable consumer that that they will only receive the $1,000 after meeting specific requirements. *See Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *8 (S.D.N.Y. Mar. 21, 2022) (dismissing the plaintiff's GBL §§ 349 and 350 claims in a product label case and finding that a reasonable consumer would not be misled into thinking that a label reading "retains ice for *up to* 5 days at 90 degrees F[ahrenheit] under test conditions" means that the ice cooler will do so under normal conditions); *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 283–84 (S.D.N.Y. 2011) ("[The] [d]efendant's representations as to speed of its Internet service are qualified by the phrase 'up to,' which would lead a reasonable consumer to expect that speeds could be less than the advertised '3x faster' and '100x faster' speeds"), *aff'd*, 714 F.3d 739, 741 (2d Cir. 2013);

16

*Druyan v. Jagger*, 508 F. Supp. 2d 228, 244 (S.D.N.Y. 2007) (holding that a reasonable consumer would not be misled into believing that a concert was guaranteed to take place as scheduled where the ticket stated, "DATE & TIME ARE SUBJECT TO CHANGE.").

Plaintiff cites *Cooper v. Anheuser-Busch, LLC* to argue that the Court can nevertheless find misrepresentations under GBL §§ 349 and 350 even with the inclusion of accurate disclosures.  553 F. Supp. 3d 83, 106 (S.D.N.Y. 2021).  However, *Cooper* simply establishes that, as a matter of law, a misrepresentation on a product label solely focused on a specific aspect of the product is not cured by the existence of a disclaimer on the back label of the product.  *Id.* In *Cooper*, the Court held that it "cannot conclude that the disclosures [regarding 'Flavored Malt Beverages'] on the bottom of [d]efendant's packaging renders [p]laintiffs' 'allegations of deception implausible' as a matter of law."  *Id.*  A label on a consumable product is unlike the Promotional Terms at issue in this case which contains the explicit terms for satisfying promotion requirements.  Thus, a reasonable consumer opening a DraftKings account would review the Promotional Terms in order to determine how to satisfy the Promotion requirements unlike a reasonable consumer who may not read the fine print on the back of a tangible good. *See Wright*, 439 F. Supp. 3d at 119 (finding that the cases cited by plaintiff for the proposition that the existence of a disclosure does not cure a misrepresentation were distinguishable because it was "much more reasonable to expect a contest participant to observe the official rules of [a] contest than to expect a consumer to read the obscure fine print on the back of a tangible good.")

Therefore, Plaintiff has not stated a claim under the GBL and the Court grants Defendant's motion and dismisses Plaintiff's GBL §§ 349 and 350 claims.[6]

---

[6]  Because the Court finds that Plaintiff has not met the materially misleading element, it does not reach the injury element.

### c.    Unjust enrichment claim

Defendant argues that Plaintiff's unjust enrichment claim must be dismissed because Plaintiff is impermissibly using it as a "catchall cause of action that is factually indistinguishable from his other claims."  (Def.'s Mem. 2.)  In support, Defendant contends that the unjust enrichment claim is duplicative because it rests on the same factual allegations supporting Plaintiff's other claims — specifically, the same "'misleading misrepresentations to Plaintiff and Class [M]embers' that [Plaintiff's] claims were made in the Promotion and 'induce[d] them to create accounts and place bets.'"  (*Id.* at 24 (citing Compl. ¶ 101).)

Plaintiff argues that he has adequately alleged an unjust enrichment claim which is not "duplicative because Plaintiff is allowed to plead in the alternative."  (Pl.'s Opp'n 18 (citing Fed. R. Civ. P. 8(d)(2)).)  In support, Plaintiff relies on Defendant's "misleading and deceptive representations about the promotional offers" and specifically alleges that "Defendant benefited from inducing Plaintiff to pay money" based on the representations and that it would be unjust for Defendant to retain the profits gained from the representations.  (*Id.* at 18–19.)  Plaintiff also argues that while an unjust enrichment claim is "viable only in the absence of an enforceable agreement . . . governing the subject matter of the dispute," the validity of a contract and whether it governs a particular subject matter "cannot be determined on the motion to dismiss."  (*Id.* at 20 (citations omitted).)

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Courchevel 1850 LLC v. Wisdom Equities LLC*, 846 F. App'x 33, 36 (2d Cir. 2021) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)); *Myun-Uk Choi v. Tower Res. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (same).  An unjust enrichment claim "may be premised on deceptive conduct."

*Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 208 (W.D.N.Y. 2020); *see also Leboeuf v.
Edgewell Pers. Care Co.*, No. 22-CV-642, 2023 WL 5432265, at *16 (N.D.N.Y. Aug. 23, 2023)
(same); *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (App. Div. 2004) ("[The] [p]laintiffs'
allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for
its products state a cause of action for unjust enrichment.").  However, "unjust enrichment is not
a catchall cause of action to be used when others fail [and an] unjust enrichment claim is not
available where it simply duplicates, or replaces, a conventional contract or tort claim."
*Mancuso*, 454 F. Supp. 3d at 208 (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790
(2012)); *see also Ham v. Lenovo (U.S.) Inc.*, 664 F. Supp. 3d 562, 584 (S.D.N.Y. 2023) ("Where
an 'unjust enrichment claim is premised on the same factual allegations as those supporting [a
plaintiff's] other claims, and [a plaintiff] ha[s] not alleged distinct damages with respect to this
claim,' then a plaintiff's unjust enrichment claim will be dismissed." (alterations in original)
(quoting *Cooper*, 553 F. Supp. 3d at 115)).  "Two claims are duplicative of one another if they
'arise from the same facts . . . and do not allege distinct damages.'"  *NetJets Aviation, Inc. v.
LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d
536, 538 (App. Div. 2008)); *see also In re Colum. Coll. Rankings*, No. 22-CV-5945, 2024 WL
1312511, at *18 (S.D.N.Y. Mar. 26, 2024) (same); *Turk*, 2022 WL 836894, at *14 (explaining
that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a
conventional contract or tort claim," and "[t]wo claims are duplicative of one another if they
'arise from the same facts and do not allege distinct damages'" (alteration in original) (first
quoting *Corsello*, 18 N.Y.3d at 790; and then quoting *NetJets Aviation, Inc.*, 537 F.3d at 175));
*Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 246 (S.D.N.Y. 2022) (similar); *Grossman v. Simply
Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) ("[U]njust enrichment claims

should be dismissed 'where the violative conduct alleged is conterminous with a conventional

tort or contract claim, regardless of whether the tort or contract claim is dismissed.'" (quoting

*Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018))); *see also Bowring v.*

*Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (dismissing unjust enrichment

claim because it was duplicative of the plaintiff's other dismissed claims).

Plaintiff brings claims under GBL §§ 349 and 350.[7]  Plaintiff's unjust enrichment claim

is based on the same allegations as set forth in support of the GBL claims, and Plaintiff has not

shown that his unjust enrichment claim differs from his GBL claims nor that the alleged damages

are distinct.  The Court therefore dismisses Plaintiff's unjust enrichment claim as duplicative of

his GBL claims.[8]  *See, e.g.*, *In re Colum. Coll. Rankings*, 2024 WL 1312511, at *19 ("Courts in

the Second Circuit have consistently held that unjust enrichment claims that are duplicative of

GBL claims should be dismissed." (alterations and citations omitted)); *Anderson v. Unilever*

*U.S., Inc.*, 607 F. Supp. 3d 441, 463 (S.D.N.Y. June 16, 2022) (dismissing unjust enrichment

---

[7]  As discussed below, because Plaintiff abandoned his fraudulent inducement and intentional misrepresentation claims, the Court will not consider those claims in determining whether the unjust enrichment claim is duplicative.  *See INTL FCStone Markets, LLC v. Agro Santino OOD*, 20-CV-2658, 2021 WL 2354567 (S.D.N.Y. June 9, 2021) (dismissing unjust enrichment claim because it is duplicative of plaintiff's breach-of-contract claim but not considering the abandoned monies had and received claim).

[8]  Based on the facts alleged in this case, the Court is not persuaded by Plaintiff's argument that he is entitled to plead his unjust enrichment claim in the alternative under Rule 8 of the Federal Rules of Civil Procedure.  (*See* Pl.'s Opp'n 18.)  As other district courts have explained, while "unjust enrichment may be pleaded in the alternative," even when "pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where [the plaintiffs] fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."  *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 45 (S.D.N.Y. 2023) (internal quotation marks and citations omitted).  Moreover, courts commonly dismiss claims for unjust enrichment as duplicative even where the duplicated claim has also been dismissed.  *See Columbo v. Philips Bryant Park LLC*, No. 22-CV-775, 2024 WL 1138942, at *15 (S.D.N.Y. Mar. 15, 2024) ("[C]ourts may dismiss claims for unjust enrichment as duplicative even where the duplicated claim has been dismissed." (citations omitted)).

claim where plaintiff has not alleged distinct damages from its other claims); *Turk*, 2022 WL 836894, at *14 (dismissing unjust enrichment claim where the plaintiff's allegations that the labeling on the defendant's ice coolers was deceptive and misleading was premised on the same factual allegations as those supporting the plaintiff's other claims, and the plaintiff had not alleged distinct damages with respect to the unjust enrichment claim); *Grossman*, 516 F. Supp. 3d at 285 (dismissing unjust enrichment claim that "duplicate[d] the plaintiff's other claims, which ar[o]se out [of] identical facts," namely "the defendant's alleged misrepresentation on the [p]roduct packaging"); *Mancuso*, 454 F. Supp. 3d at 208 (dismissing the plaintiff's unjust enrichment claims because the claim "relie[d] on the same operative facts of his other claims" and "to the extent these claims ultimately succeed, the unjust enrichment claim would be duplicative, and to the extent the claims fail, the basis for [the plaintiff's] unjust enrichment claim would necessarily crumble" (quoting *Brady v. Anker Innovations Ltd.*, No. 18-CV-11396, 2020 WL 158760, at *12 (S.D.N.Y. Jan. 13, 2020))); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 222 (S.D.N.Y. July 10, 2019) (dismissing unjust enrichment claim where the "plaintiffs have offered no distinction for how the unjust enrichment claim differs from their tort claims").

Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's unjust enrichment claim.

### d.    Fraudulent inducement and intentional misrepresentation claims and request for injunctive relief

Defendant argues that Plaintiff has abandoned his fraudulent inducement and intentional misrepresentation claims, as well as his request for injunctive relief because Plaintiff did not oppose Defendant's arguments in support of its motion.  (Def.'s Reply 1.)  In its motion papers, Defendant argues that Plaintiff fails to state fraudulent inducement or intentional misrepresentation claims for several reasons: (1) there is "no false statement or omission," (2)

Plaintiff does not plead reliance on the alleged misleading statements; (3) Plaintiff does not plead any actionable damages; and as to the fraudulent inducement claim, (4) Plaintiff fails to "allege a contract between the parties." (Def.'s Mem. 18.)  First, Defendant argues that it provided Plaintiff with the Promotional terms containing the Promotion requirements to be eligible for the $1,000 deposit bonus so "there [is] no false statement or omission." (*Id.*)  Second, Defendant argues that Plaintiff does not allege that the "Promotion caused him to create a DraftKings account. (*Id.*)  Third, Defendant contends that Plaintiff fails to allege that he "lost money" or "suffered any actionable injury due to the Promotion," (*id.*), and as to the fraudulent inducement claim, Plaintiff also fails to allege that "the parties entered a contractual agreement that harmed him," (*id.* at 22).  In addition, Defendant contends that Plaintiff lacks standing to seek injunctive relief because Plaintiff fails to and cannot plausibly allege imminent future harm. (Def.'s Mem. 25.)  In support, Defendant argues that Plaintiff would not be able to allege an intent to enter the Promotion again because Plaintiff has, himself, alleged the "Promotion was . . . limited to 'new' DraftKings users," and if Plaintiff somehow enters the Promotion again, that would be in violation of "DraftKings Terms of Use." (*Id.*)

Plaintiff did not respond to Defendant's arguments in support of its motion to dismiss Plaintiff's fraudulent inducement and intentional misrepresentation claims nor its request for injunctive relief and the Court therefore deems the claims and injunctive request abandoned.  *See Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) ("'[W]hen a party fails adequately to present arguments' in a brief, a court may properly 'consider those arguments abandoned,' especially 'in the case of a counseled party' where 'a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned'" (first quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d

158, 172 (2d Cir. 2004); and then quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014))); *see also Jackson*, 766 F.3d at 196 ("Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others.")

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's motion and dismisses the Complaint.

Dated: July 28, 2025
       Brooklyn, New York

SO ORDERED:

_____ s/ MKB _____
MARGO K. BRODIE
United States District Judge